(No. 72862.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDREW KOKORALEIS, Appellant.

*Opinion filed March 31, 1994.—Rehearing denied May 27, 1994.*

Alan M. Freedman and Bruce H. Bornstein, of Freedman & Bornstein, P.C., and Jane Raley, all of Chicago, for appellant.

Roland W. Burris, Attorney General, of Springfield, and James Ryan, State's Attorney, of Wheaton (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Steven J. Zick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

This court, on direct appeal, affirmed defendant's conviction and death sentence for the aggravated kidnapping and murder of Lorraine Borowski. (*People v. Kokoraleis* (1989), 132 Ill. 2d 235.) Rehearing was denied, and the United States Supreme Court declined review (*Kokoraleis v. Illinois* (1990), 497 U.S. 1032, 111 L. Ed. 2d 804, 110 S. Ct. 3296). On January 31, 1991, defendant filed a post-conviction petition (Ill. Rev. Stat. 1991, ch. 38, par. 122—1) in the circuit court of Du Page County challenging the conviction and sentence. The petition was dismissed without an evidentiary hearing. (See Ill. Rev. Stat. 1991, ch. 38, par. 122—5.) This appeal followed. 134 Ill. 2d R. 651(a).

We affirm.

Defendant's participation in a series of random abductions, rapes, and grisly murders of young women, including that of Lorraine Borowski, during 1981 and 1982, is amply recounted in this court's earlier opinion. We repeat, within the context of the issues now raised by defendant, only those few facts necessary to a disposition of the instant appeal.

ASSISTANCE OF COUNSEL AT SENTENCING

Defendant contends the representation he received from his appointed counsel during the sentencing phase of the trial was ineffective. The claim is grounded, presumably, on the sixth and fourteenth amendments of the United States Constitution. (See U.S. Const., amends. VI, XIV; *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) We note that defendant's appointed trial counsel did not represent him on direct appeal or in the post-conviction proceeding.

Defendant's claim is addressed to what counsel did as well as what counsel did not do in presenting

mitigating factors to avoid a death sentence. The arguments are somewhat interrelated.

Defendant complains that what counsel did do was to "nitpick[ ]" at inconsistencies in the State's case and hopelessly implore the jury to consider defendant's rehabilitative potential. But, given the nature and particularities of the crimes, including the specter of bizarre cult activity, defendant asserts that arguing the existence of residual doubt and rehabilitative potential were "[n]on-[p]lausable" options. Instead, what counsel ought to have done was investigate whether defendant's culpability was rooted in a condition of "extreme emotional and/or mental disturbance."

We decline to consider whether what counsel did argue amounted to ineffective assistance.

A post-conviction petition offers but a collateral attack remedy. The attendant proceeding is not a substitute for, or an addendum to, direct appeal. Accordingly, principles of *res judicata* and procedural default have long been recognized to preclude consideration of claims that were or could have been earlier raised. (*People v. Albanese* (1988), 125 Ill. 2d 100, 104-05.) An ineffective assistance of counsel claim permits no wholesale departure from those considerations. See *Albanese*, 125 Ill. 2d at 105 (precluding consideration of a "somewhat different" ineffective assistance claim from one earlier ruled upon).

The opportunity to take issue with what counsel did argue during the sentencing phase of the trial was on direct appeal. Defendant did not do so, although, it should be noted, he did assert an ineffective assistance claim with regard to other matters equally apparent from the record's face. (See *Kokoraleis*, 132 Ill. 2d at 275.) We find no recognized exception (see *People v. Flores* (1992), 153 Ill. 2d 264, 274) applicable here to excuse the procedural default.

However, the issue of whether what counsel did not do amounts to ineffective assistance is given to different considerations. That aspect of the claim involves the duty to independently investigate possible defenses, a "subset" of defense counsel's overall obligation (see *United States v. Decoster* (D.C. Cir. 1979), 624 F.2d 196, 209-10).

The alleged substance of what counsel did not independently investigate is made clear in affidavits attached to the petition. Chief among them is that of Dr. Robert Miller, a psychiatrist, for that affidavit effectively incorporates the content of the others.

Dr. Miller's affidavit offers that the death of defendant's mother, coupled with the rigid and detached personality of his father, rendered defendant "psychologically adrift." Defendant was thus made vulnerable to the influence of Robin Gecht, defendant's acquaintance and codefendant. Gecht, who fancied he possessed a Charles Manson-like persona, subjugated defendant to his will to commit the crimes.

Effective representation, the argument goes in light of the affidavits, required counsel to investigate defendant's psyche as the root cause of his criminal responsibility. Defendant, however, never wavered from his insistence that he did not commit any of the crimes for which he now stands convicted. Defendant took the stand at trial in his own defense, championing his complete innocence. He insisted that inculpatory statements he had given to police—part and parcel of the prosecution's case against him—were coerced. (*Kokoraleis*, 132 Ill. 2d at 251-52.) In fact, defendant claimed his knowledge about the crimes came exclusively from talking to police officers. (*Kokoraleis*, 132 Ill. 2d at 251.) To the very end, he steadfastly maintained he was "framed" (*Kokoraleis*, 132 Ill. 2d at 251) for, at the sentencing hearing, defendant reiterated his belief in sworn testimony that he was unjustly convicted.

Defendant's insistence of innocence colors the understanding of his claim. The argument is not that objective evidence, like a psychological profile, existed which should have led counsel to independently explore whether defendant's will was overborne by Gecht in spite of defendant's protestations of innocence. Such circumstances are likely to generate an issue as to counsel's effectiveness. (See *People v. Mozingo* (1983), 34 Cal. 3d 926, 932, 671 P.2d 363, 366, 196 Cal. Rptr. 212, 215 (recognizing an ineffective-assistance claim based, in part, on the existence of reports as to the defendant's low IQ score and progression toward schizophrenia); *cf. Collins v. Francis* (11th Cir. 1984), 728 F.2d 1322, 1348-49 (declining to recognize an ineffective-assistance claim where objective evidence, like a psychological profile, was not available to counsel to show that a co-participant in a murder coerced the defendant to commit the crime).) Instead, the argument is that counsel was ineffective for not having divined, on his own, an explanation for defendant's culpability in the face of defendant's assertions of innocence.

Lack of investigation is to be judged against a standard of reasonableness given all of the circumstances, "applying a heavy measure of deference to counsel's judgments." (*Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) What investigation is reasonable depends on the informed strategic choices of, as well as the information supplied by, the defendant. *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695-96, 104 S. Ct. at 2066.

In view of those concerns, defendant's argument must fail. Even assuming some basis existed for counsel to investigate whether defendant suffered from a disturbed psyche, the fact that counsel did not do so was not unreasonable given the circumstances of this case. The defense strategy had been to bar at the outset of

trial the introduction of evidence that defendant's crimes were part of some cult ritual. (See *Kokoraleis*, 132 Ill. 2d at 260-61.) It would have been inconsistent with the strategy of barring that evidence for counsel to later argue the very same evidence showed, in the sentencing phase, that defendant's culpability was due to a disturbed psyche. The fact that counsel did not investigate sources to glean such evidence is therefore rendered strategically inconsequential. Further, as already noted, arguing the lurid particularities of the crimes as evidence of a psyche ripe for Gecht's enslavement was inconsistent with defendant's sworn proclamations of innocence. We therefore cannot conclude counsel's representation fell below the level of constitutional effectiveness. See *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, adopted by *Albanese*, 125 Ill. 2d 100; see also *People v. Spreitzer* (1991), 143 Ill. 2d 210, 218, citing *People v. Caballero* (1989), 126 Ill. 2d 248, 260.

## RIGHT OF CONFRONTATION

Edward Spreitzer, a third codefendant, initially revealed defendant's culpability during conversations with police detectives. Defendant contends admission at trial of the officers' testimony as to Spreitzer's statements violated defendant's sixth amendment right to confront witnesses because Spreitzer did not testify at defendant's trial. See U.S. Const., amend. VI.

Defendant candidly acknowledges he raised, and this court rejected, the same issue on direct appeal. (See *Kokoraleis*, 132 Ill. 2d at 262-64.) Defendant states the issue is included in the post-conviction petition to give the court "opportunity to reconsider" its original disposition and to preserve the claim for Federal *habeas corpus* review.

While Supreme Court Rule 367 (134 Ill. 2d R. 367 (permitting petitions to direct reviewing courts to points

overlooked or misapprehended)) provides some opportunity for such reconsideration, the Post-Conviction Hearing Act does not. (*People v. Del Vecchio* (1989), 129 Ill. 2d 265, 284; *Albanese*, 125 Ill. 2d at 104.) Only constitutional issues which have not been previously determined are proper for inclusion in a post-conviction petition in view of the principles of *res judicata*. (See *Del Vecchio*, 129 Ill. 2d at 284; *Albanese*, 125 Ill. 2d at 104-05, citing *People v. Silagy* (1987), 116 Ill. 2d 357, 365.) We decline the invitation to reconsider the question.

As for preservation of the issue for *habeas corpus* proceedings, it is this court's rejection of the claim on its merits that suffices to exhaust State remedies and so ripen the issue for Federal review. (See *Duckworth v. Serrano* (1981), 454 U.S. 1, 3, 70 L. Ed. 2d 1, 3-4, 102 S. Ct. 18, 19.) Inclusion of the claim in a post-conviction petition is of no moment.

## SENTENCING INSTRUCTIONS

Defendant raises two separate arguments related to the instructions given to the jury during the sentencing phase of the trial.

The first argument focuses on the trial judge's direction to the jury that defendant would be sentenced to "a term of imprisonment" if the panel declined to impose the death penalty. (See Illinois Pattern Jury Instructions, Criminal, No. 7A.09 (2d ed. 1981).) Defendant complains that the jury was not instructed that, if a death sentence was rejected, defendant would be sentenced to natural life in prison. The defendant claims, generally, that the death sentence imposed in light of that failure violated protections afforded under the eighth and fourteenth amendments. See U.S. Const., amends. VIII, XIV.

As for that argument, defendant's brief again informs that the same issue was raised and rejected on

its merits by this court on direct appeal. (*Kokoraleis*, 132 Ill. 2d at 286-88.) As in the confrontation claim above, the issue may not be raised in post-conviction proceedings under the doctrine of *res judicata*.

The second argument raised by defendant is an assertion that the instructions were not sufficiently clear to provide proper guidance in imposing a death sentence. Defendant claims that imposition of the death penalty was therefore arbitrary in violation of eighth amendment guarantees. See U.S. Const., amend. VIII.

Defendant cites three deficiencies: (1) the instructions failed to inform the jury that it might consider mitigating factors not provided by statute or the judge; (2) the instructions did not explain which party bore the burden of persuasion; and (3) the emphasized phrase in the following sentence was vague: "If, after your deliberations, you are not unanimous in concluding that there *is no mitigating factor or factors sufficient to preclude* imposition of the death sentence, sign the form of verdict so indicating." (Emphasis added.) See Illinois Pattern Jury Instructions, Criminal, No. 7A.15 (2d ed. 1981).

Defendant's argument is grounded upon a Federal district court memorandum opinion in *United States ex rel. Free v. Peters* (N.D. Ill. 1992), 806 F. Supp. 705, a *habeas corpus* proceeding, in which identical arguments were successfully made. The district court's opinion turned on acceptance of the results of a study indicating a lack of juror comprehension with regard to the instructions. That study, the district court determined, provided reason to depart from *Williams v. Chrans* (7th Cir. 1991), 945 F.2d 926, and *Silagy v. Peters* (7th Cir. 1990), 905 F.2d 986, both upholding the constitutional validity of the Illinois death instructions.

The Court of Appeals for the Seventh Circuit, however, after presaging the outcome of *Free v. Peters*

on appeal in *Gacy v. Welborn* (7th Cir. 1993), 994 F.2d 305, reversed the district court's ruling with regard to the study. (*Free v. Peters* (1993), 12 F.3d 700.) Given the appellate disposition of *Free v. Peters* and our agreement with the court of appeal's analysis, no reason exists to further consider defendant's argument or even address the State's urgings to ignore it.

NATURAL LIFE SENTENCE FOR RELATED MURDER

Defendant also stands convicted by a Cook County jury of the murder of Rose Beck Davis. That jury, however, rejected the State's request to impose the death penalty after considering similar aggravating circumstances presented at trial here. Details of the murder of Davis were presented by the State at trial in this case.

Defendant contends that the disparate sentences entitle him, at a minimum, to a new sentencing hearing in this case. Defendant cites the fifth amendment protection against double jeopardy (U.S. Const., amend. V) as well as principles of *res judicata*, collateral estoppel, proportionality, and fundamental fairness, directing attention, generally, to the eighth and fourteenth amendments (U.S. Const., amends. VIII, XIV).

In a related argument, defendant claims that the jury here should have been informed that the Cook County jury had rejected the death sentence in the Davis trial.

The above claims could have been, but were not, raised on direct appeal and, again, finding no recognized exception applicable, we decline to consider their merits.

For the reasons set forth above, we affirm the judgment of the circuit court. We direct the clerk of this court to enter an order setting Wednesday, September 14, 1994, as the date on which the sentence of death, entered by the circuit court of Du Page County, shall be carried out. Defendant shall be executed in the manner

provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119—5.) The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*