Andrew KOKORALEIS, Petitioner–
Appellant,

v.

Jerry GILMORE, Warden, Pontiac
Correctional Center, Respondent–
Appellee.

No. 97–2605.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 25, 1997.

Decided Dec. 16, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 12, 1998.

rate a ghastly routine: kidnapping, rape, torture, stabbing victims to death with knives or ice picks, mutilating the corpses, and hiding the remains. Some victims had a breast amputated by piano wire. Kokoraleis and his confederates (his brother Thomas Kokoraleis, Robin Gecht, and Edward Spreitzer) would masturbate on and then eat the victim's breast. A jury convicted Kokoraleis of killing Lorraine Borowski and sentenced him to death. The Supreme Court of Illinois affirmed, 132 Ill.2d 235, 138 Ill.Dec. 233, 547 N.E.2d 202 (1989), and rejected a collateral attack, 159 Ill.2d 325, 202 Ill.Dec. 279, 637 N.E.2d 1015 (1994), as did the district court, 963 F.Supp. 1473 (N.D.Ill.1997).[*] Kokoraleis presents three arguments to us: that he received ineffective assistance of counsel at sentencing; that another jury's decision not to impose the death penalty for his murder of Rose Beck Davis precludes capital punishment for his murder of Lori Borowski; and that the evidence does not support the conclusion that he is eligible for the death penalty. The latter two arguments seek to preclude any capital resentencing, so we start with them. Because the petition was filed before April 24, 1996, the Antiterrorism and Effective Death Penalty Act is inapplicable. *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Illinois requires the prosecutor to establish a defendant's eligibility for capital punishment. One way to do so is to demonstrate that the defendant killed at least two people and that "the deaths were the result of either an intent to kill more than one person or of separate premeditated acts". 720 ILCS 5/9–1(b)(3). (The codification of Illinois law after the trial did not materially change the language; for clarity we use the current citation.) To meet this eligibility requirement, the prosecution introduced into evidence a copy of the judgment convicting Kokoraleis of murdering Davis, a crime the state described as a "separate premeditated act".

Carol R. Heise, Freedman & Bornstein, Chicago, IL, Alan M. Freedman (argued), Midwest Center for Justice, Ltd., Chicago, IL, for Petitioner–Appellant.

Steven R. Splitt (argued), Office of the Atty. General Criminal Appeals Div., Chicago, IL, for Respondent–Appellee.

Before BAUER, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Andrew Kokoraleis has confessed to killing as many as 18 women. His confessions nar-

---

[*] Spreitzer likewise has been sentenced to death, and earlier this year we held that this sentence could not be upset on collateral attack. *Spreitzer v. Peters*, 118 F.3d 1211, amended, 127 F.3d 551 (7th Cir.1997). Thomas Kokoraleis pleaded guilty in exchange for a sentence of 70 years' imprisonment. *See People v. Kokoraleis*, 193 Ill. App.3d 684, 140 Ill.Dec. 482, 549 N.E.2d 1354 (2d Dist.1990). The state informs us that Gecht, who alone among the four did not confess, has been convicted of attempted murder on the testimony of a surviving victim and is serving a term of natural-life imprisonment.

On direct appeal the Supreme Court of Illinois remarked (138 Ill.Dec. at 249–50, 547 N.E.2d at 219–20):

> The multiple-murder aggravating circumstance ... requires that a defendant have been convicted of murdering two or more persons. That was unquestionably proved here. The sentencing jury had found the defendant guilty of the murder of the victim in the present case, Lori Borowski; whether the defendant was guilty of only one other murder or of several other murders could not have affected the jury's determination that he had been convicted of at least two such offenses and that the multiple-murder circumstance therefore was established. As we have seen, defense counsel made no challenge to the evidence of the defendant's prior conviction in Cook County for the murder of Mrs. Davis.

Notwithstanding this observation, Kokoraleis argued in the district court that he is ineligible for capital punishment because the judgment of conviction does not show that "the deaths were the result of either an intent to kill more than one person or of separate premeditated acts". The district judge sensibly replied that this contention—not presented to the state courts on direct appeal or collateral attack—has been forfeited. 963 F.Supp. at 1482. Kokoraleis maintains that, because the Supreme Court of Illinois automatically reviews all death sentences, it is impossible to forfeit a defense. An automatic-review provision removes the possibility of forfeiture by failure to appeal but does not preclude forfeiture by failure to advance a particular argument. Collateral review in federal court is designed for persons who have presented their claims to the state courts; unless they have done so, it is impossible to say that the state failed to honor the accused's constitutional rights. Litigants may decide for themselves which theories to present and which to withhold. A non-decision on a withheld theory does not justify collateral relief—*particularly* not when the theory is grounded in state rather than federal law, and the state's highest court has announced (albeit in dictum) that the theory is unsound. Kokoraleis was convicted of first-degree murder for Davis's death, and first-degree murder in Illinois

requires proof of malice aforethought, which is to say premeditation. Whether a judgment of conviction for another first-degree murder satisfies 720 ILCS 5/9–1(b)(3) is a question of Illinois law, and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Like the district court, we think it unnecessary to inquire whether the prosecution also established eligibility for capital punishment under the felony-murder circumstance listed in 720 ILCS 5/9–1(b)(6). In Illinois, one circumstance is enough.

Seeking to turn the Davis conviction to his advantage, Kokoraleis contends that the jury's decision in that case to sentence him to life imprisonment precludes a death sentence for the Borowski murder. As he sees it, Illinois is "collaterally estopped" to seek capital punishment a second time for the same series of murders that was before a prior jury. And because *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), holds that the double jeopardy clause incorporates some aspects of collateral estoppel (issue preclusion), Kokoraleis believes that he is entitled to relief under § 2254. This argument was presented to the state's highest court on collateral attack and held to be forfeited because it should have been made on direct appeal. 202 Ill.Dec. at 284, 637 N.E.2d at 1020. The district judge concurred. 963 F.Supp. at 1479–80. Kokoraleis insists that he could not have employed this argument on direct appeal because it depends on the record of the Davis prosecution in Cook County, which was not before the DuPage County court in the prosecution for the Borowski murder. Yet if (as Kokoraleis believes) the record of the Cook County prosecution was not an appropriate subject of judicial notice, then it was the litigant's responsibility to place it before the court. That is, after all, how preclusion defenses are made in civil litigation. A party who seeks the benefit of issue or claim preclusion puts the necessary documents into the record. A litigant who allows the case to reach a final decision cannot later obtain relief under Fed. R.Civ.P. 60(b) by pointing to his own failure to supply the tribunal with the materials

needed to make out a defense of preclusion. The Supreme Court of Illinois did no more than apply this understanding to a preclusion defense in a criminal case.

■ Kokoraleis insists that the state court's decision to enforce its rules of procedure was so freakish that it is not an adequate state ground of decision, even if it is an independent one. *See Liegakos v. Cooke,* 106 F.3d 1381 (7th Cir.1997). Given what we have said about the normal course of civil litigation, a state court's decision to require a litigant to make an estoppel defense at trial and on direct appeal hardly deserves the appellation "freakish". But because the argument Kokoraleis makes may recur in capital cases, we now indulge the assumption that an exception to the forfeiture doctrine is available and hold, as an alternative ground of decision, that the double jeopardy clause does not prevent a state from selecting a penalty independently for each crime a person commits. This is clear enough for a serial bank robber, whose penalty for the first offense does not set a cap on total punishment for extra robberies; it is no less true for a serial killer. Each additional crime creates a fresh exposure to punishment, which may be cumulative—indeed, *must* be cumulative if there is to be deterrence for extra offenses.

Kokoraleis tells us that the question decided by the jury in the Cook County prosecution was "whether he should be put to death for torturing and being a serial killer of sixteen to eighteen women." Phrasing the question in this way makes it possible to say that the two juries decided the same issue. But this is not the question either jury decided. The Cook County jury selected the punishment for the murder of Rose Beck Davis; the DuPage County jury chose the punishment for the murder of Lori Borowski. Each jury was entitled to consider facts about Kokoraleis' background, including his other criminal acts (which by the time of the prosecution for the Borowski murder included a prior murder conviction), but this does not mean that the punishment in a given case is *for* these other crimes; it is for the crime of which the defendant now stands convicted. Otherwise every recidivist statute would violate the double jeopardy clause by imposing additional punishment for a crime that has already been punished. Yet many cases, of which *Witte v. United States,* 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), is the best recent example, hold that enhancing the punishment for a person's latest offense on account of prior criminal conduct does not impose a second punishment for that conduct. If enhancement does not amount to cumulative punishment, it follows that a reduced punishment for the prior crime or even acquittal of the prior charge does not preclude a higher punishment for the current offense if the person selecting the sentence concludes that the prior acts show that the offender is more dangerous or depraved than the facts of the current crime suggest when considered in isolation. *United States v. Watts,* —— U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), makes that implication explicit by holding that a court may enhance the sentence for the crime at hand on account of charges for which the defendant was tried and acquitted. Although Watts was sentenced under the Sentencing Guidelines, the principle is general—as the Court made clear by relying on *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), a capital case. Kokoraleis was convicted rather than acquitted of the Davis murder; if even an outright acquittal would not have precluded its consideration when selecting the appropriate punishment for the Borowski murder, then conviction accompanied by a lenient punishment cannot have that effect. To put the point in the language of the double jeopardy clause: "nor shall any person be subject *for the same offence* to be twice put in jeopardy of life or limb" (emphasis added). Kokoraleis has been in jeopardy only once for the murder of Lori Borowski, and his murder of Rose Beck Davis is not "the same offence" under any approach. *Ashe* holds that facts about an element of the offense established adversely to the prosecution may not be relitigated when the standard of proof is the same in each case, but no fact concerning the Borowski murder was established adversely to the state in the prosecution for the Davis murder.

What remains is a line of argument that has become the staple of capital litigation: petitioner's current lawyers contend that their predecessors were incompetent. In retrospect, we know that prior counsel did not craft a winning strategy; Kokoraleis received "ineffective" assistance of counsel in this *ex post* sense. But the right perspective is *ex ante* (at the time of the prosecution) rather than *ex post*. The sixth amendment does not guarantee success or entitle defendants to the best available counsel or the most prudent strategies. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), holds, and many later cases reiterate, that the Constitution is satisfied when the lawyer chooses a professionally competent strategy that secures for the accused the benefit of an adversarial trial. *Compare Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir.1997), with *Hall v. Washington*, 106 F.3d 742 (7th Cir.1997). "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. A trial may be adversarial and fair even if the chosen strategy goes awry. Because counsel cannot experiment with different strategies, it is difficult in both principle and practice to know how best to proceed. Most plans for the conduct of a trial entail risks, for jurors' reactions are unpredictable. Circumstances of the crime and the strategy at trial on the guilt issue also may constrain the choices at a capital sentencing trial. That is why "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Ibid.* (citation omitted).

Counsel put the state's case to the test at sentencing. But his options were limited (or so a competent lawyer could have thought) by Kokoraleis' testimony before the same jury at trial. Kokoraleis took the stand and denied killing Borowski or anyone else. All of the charges against him were false, Kokoraleis insisted, and all four of his confessions had been coerced. Much evidence in addition to the confessions tied Kokoraleis to the crimes, and the jury did not accept his testimony, but at sentencing he again took the stand and denied participating. Trying to make the best of this situation, his lawyer advanced what has come to be called a "residual doubt defense." Conceding that the jury already had found Kokoraleis guilty beyond a reasonable doubt, counsel argued that this is not enough to put a man to death. Only if it is *certain* that Kokoraleis committed the murder should the jury consider execution as a penalty, counsel argued. Two religious figures (a chaplain at Cook County jail and a counselor at the DuPage County jail) testified that they found Kokoraleis to be helpful, unthreatening, and a candidate for rehabilitation, setting up an argument that capital punishment was unnecessary to protect society. A character witness also testified for Kokoraleis. Hindsight reveals that these lines of defense did not persuade the jury, but it is impossible to deny that counsel put on a defense informed by a professional assessment of available options.

The legal team now representing Kokoraleis believes that his prior lawyers should have taken a different line of defense. Instead of arguing "residual doubt" and presenting the mitigating testimony, counsel should have contended that Kokoraleis was emotionally disturbed, a pawn under Gecht's control. In support of this alternative line of defense current counsel tendered an affidavit by a psychiatrist, who wrote that Kokoraleis appears to have "borderline personality disorder", making him vulnerable to the influence of a criminal cult organizer like Charles Manson. The district court doubted that this affidavit satisfies the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because it was based on Kokoraleis' confessions rather than the interviews and tests a psychiatrist normally uses to reach a diagno-

sis. The district judge thought the affidavit a poor basis on which to upset the judgment of a state court. 963 F.Supp. at 1487–90. But the big question is not whether Kokoraleis' current legal team has found a good witness; it is whether his former lawyers should have suspected that he was mentally impaired and conducted an appropriate investigation in order to obtain evidence for use at sentencing. *Burris v. Parke,* 116 F.3d 256, 259–60 (7th Cir.1997); *Brewer v. Aiken,* 935 F.2d 850 (7th Cir.1991).

The lawyer who represented Kokoraleis at trial and sentencing testified that he had three reasons not to pursue a diminished-mental-capacity or undue-influence defense. One was that neither he nor any of Kokoraleis' family and acquaintances suspected such a possibility; he appeared normal to them all. Now obviously a serial killer who rapes, tortures, and eats his victims after fetishistic, misogynous ceremonies is not "normal"; but one can be abnormal without being mentally impaired. The jury well knew how deviant the criminal conduct was. Kokoraleis and Spreitzer murdered Borowski without Gecht's participation, which suggests that Kokoraleis is abnormally wicked rather than abnormally deficient in resistance to the control of others. Let us suppose that this consideration is discounted—although *Strickland* suggests that any considered tactical or strategic choice is entitled to the strong presumption of competence. Counsel's other two reasons also represent a thoughtful (if not unimpeachable) exercise of professional judgment. One is that counsel did not think it would help to present a line of defense that would focus the jury's attention on the repulsive details of the crimes Gecht, Spreitzer, and the two Kokoraleis brothers (in various combinations) committed. The other is that a defense along the lines of "Gecht made me do it" could not be reconciled with the defense on the merits: "I didn't do it."

Kokoraleis insisted that he did not commit a crime. What competent lawyer labels his own client a serial murderer and undertakes a defense at war with the defendant's protestations of innocence? A lawyer is the client's agent. Lawyers cannot condemn their own clients as murderers who committed perjury to the jurors' faces. It does not take a vivid imagination to see what argument would now be before us had counsel denounced his client as a liar and argued that the depravity of his crimes demonstrated a mental shortcoming that made capital punishment inappropriate. Why should the jurors accept the position of a man whose own lawyer calls him a liar? How could *anything* the defense said thereafter have been credible? Logical jurors could have concluded that the defense was desperate, willing to say anything without regard to the facts. Current counsel contend that the defense of innocence was irrelevant at sentencing; the jury didn't buy it, so why cling to a losing strategy? Yet even after a conviction things can get worse; a jury could think a multiple murderer more blameworthy for being devious and manipulative. Whether the jury would think this, however, is in the end irrelevant. Counsel could believe that jurors would reason this way. A reasoned decision to make the best of a bad situation by pursuing a particular line of defense satisfies the constitutional minimum. AFFIRMED.