**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Christopher R. MESSINO and Clement A. Messino, Defendants–Appellees.**

**No. 99–1674.**

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1999.

Decided June 22, 1999.

Barry Rand Elden, Chief of Appeals (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellant.

Marc W. Martin (argued), Chicago, IL, for Defendant–Appellee Christopher R. Messino.

Douglas P. Roller (argued), Roller & Associates, Chicago, IL, for Defendant–Appellee Clement A. Messino.

Before BAUER, MANION, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

Shortly before the ordered starting date of Christopher ("Dick") and Clement Messino's trial, the government announced that it intended to call William Underwood ("Underwood"), the Messinos' co-conspirator, as a witness. The Messinos objected on the grounds that Dick Messino's attorney had previously represented Underwood. The district court issued an order barring Underwood's testimony in order to remedy the conflict of interest. The government appealed the district court's order. We reverse and remand.

828

## I. BACKGROUND

Dick and Clement Messino are brothers and former officers of the Chicago Police Department. On April 27, 1995, they were convicted of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and willfully making false declarations about income to the Internal Revenue Service, in violation of 26 U.S.C. § 7206(1). In addition, Dick Messino was convicted of obstruction of justice for attempting to influence the testimony of a grand jury witness, in violation of 18 U.S.C. § 1503, and Clement Messino was convicted of money laundering, in violation of 18 U.S.C. § 1956. On August 7, 1997, this Court reversed the convictions of the Messinos "due to an impairment of the defendants' rights to peremptory challenges." *United States v. Underwood*, 122 F.3d 389, 391 (7th Cir.1997).

On remand, the district judge set July 20, 1998 as the deadline for filing pretrial motions other than motions in limine, and September 18, 1998 as the date to commence jury selection. On September 2, 1998, the government filed a supplemental *Santiago* proffer that set forth the proposed testimony of Underwood, the Messinos' co-conspirator. The Messinos responded with motions to bar Underwood's testimony on the grounds that Dick Messino's attorney, Marc Martin ("Martin"), had previously represented Underwood. On September 9, 1998, the district judge granted the motions and struck the government's supplemental *Santiago* proffer. The court's order stated in its entirety:

> The motions of defendants [Dick] Messino and Clement Messino to bar the testimony of William Underwood are granted. The government did not disclose Underwood would be a witness, much less the *key* witness, nor seek to supplement its *Santiago* proffer until almost two weeks before trial. Pretrial motions were due July 20, 1998. *See* Order of July 8, 1998. The prejudice to defendants by this untimely surprise is clear.

> In addition, serious conflict of interest issues would be raised as to [Dick] Messino's counsel if this motion were not granted.

(Order of September 9, 1998.)

On September 10, 1998, the government filed a motion to reconsider the September 9 order barring Underwood's testimony. On September 18, 1998, the day that jury selection was set to begin, the government asked the district court to rule on the motion to reconsider, but the court declined. The court also denied the government's request for leave to withdraw the motion, and the government's request that the trial be stayed until the motion had been decided. In response to the government's emergency petition, this Court ordered the district court proceedings stayed the same day. (Order of September 18, 1998.) On September 28, 1998, we issued a writ of mandamus, directing the district court to "expeditiously rule on the government's motion to reconsider the order of September 9, 1998." (Order of September 28, 1998.) We also ordered that "all proceedings in the district court ... other than those necessary to resolve the motion to reconsider ... continue to be stayed." (*Id.*)

On October 15, 1998, and February 1, 1999, the district judge held evidentiary hearings to resolve the motion for reconsideration. At the hearings, Underwood waived any objection he might have to Martin's conflict of interest. Underwood also stated that he had no objection to being cross-examined by Martin at the Messinos' trial, or to Martin using confidential communications to formulate Dick Messino's defense. However, Dick Messino testified that he was unwilling to waive his right to conflict-free counsel.

On February 24, 1999, the district judge issued a Memorandum Opinion and Order denying the government's motion to reconsider. The judge explained that she had initially barred Underwood's testimony for two reasons: first, because the untimely

supplemental *Santiago* proffer "posed a prejudicial surprise"; and second, because "not granting the motion would [have] result[ed] in serious conflict of interest issues as to Dick Messino's attorney." (Memorandum Opinion and Order of February 24, 1999 at 4.) However, the judge reasoned that "[t]he obvious prejudicial surprise in expanding the scope of the *Santiago* proffer on the eve of retrial, and the attendant disruption of defense pretrial preparations, ha[d] been mooted in a temporal sense by the Court of Appeals order staying retrial pending resolution of the government's reconsideration motion." (*Id.* at 7.) Nevertheless, the judge held that "the delay occasioned by the government's interlocutory appeal d[id] not remedy the conflict of interest dilemma raised by the underlying supplemental *Santiago* proffer." (*Id.*) Noting the complex nature of the case and the fact that Martin had represented Dick Messino in several related proceedings over the space of eight years, the judge found that it "would be a practical impossibility to appoint new counsel who has comparable experience and knowledge of this case." (*Id.* at 14.) As a result, the judge held that disqualifying Martin "would unreasonably burden Dick Messino's Sixth Amendment right to effective assistance of counsel and would adversely affect his right to a fair trial." (*Id.*) The judge also noted the possibility that it would be necessary to call Martin as an impeachment witness if Underwood's testimony contradicted unprivileged statements he had made to Martin in the past. (*Id.* at 12.) However, she ruled that no conclusive determination could be made prior to Underwood's testimony at trial. (*Id.*)

The government timely appealed both the order barring Underwood's testimony and the denial of the motion to reconsider.

## II. DISCUSSION

The district judge's Memorandum Opinion and Order makes clear that she is barring Underwood's testimony because of the conflict of interest that such testimony would create, and not because the government's late submission of the supplemental *Santiago* proffer was potentially prejudicial.[1] In addition, the government does not dispute the district court's finding that Underwood's testimony would create a conflict of interest for Martin. Therefore, the only issue on appeal is whether it was proper for the district court to exclude Underwood's testimony in order to eliminate Martin's conflict of interest. This issue is composed of two parts: (1) is it ever within a district court's discretion to exclude testimony in order to resolve a conflict of interest, and, if so, (2) did the district court abuse that discretion in this case.

■ Whether a district court may ever exclude testimony to resolve a conflict of interest is a question of law that we review *de novo*. Under the Federal Rules of Evidence, district judges are clearly vested with some discretion to exclude evidence. Rule 402 states that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 402. Rule 403 adds that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Thus, while creating a presumption of admissibility for relevant evidence, the Rules delineate a zone of

---

1. In any case, the *Santiago* proffer relates only to the admissibility of statements under Federal Rule of Evidence 801(d)(2)(E). *See United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978) (overruled on other grounds, *Bour-*

*jaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). Therefore, the admissibility of Underwood's direct testimony is unrelated to the timeliness of the proffer.

discretion within which judges may exclude evidence. Furthermore, it bears noting that Rule 403 authorizes the exclusion of evidence not only to avoid prejudice, but also for a host of other prudential reasons.

The government, citing *United States v. Condon*, 170 F.3d 687, 689 (7th Cir.1999), and *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), contends that evidence may never be excluded unless the Constitution or a statute requires it. However, *Condon* and *Caceres* both deal with the exclusion of probative evidence as a *sanction* for failing to comply with a statute or regulation. In contrast, in considering the permissibility of excluding evidence to avoid the disqualification of counsel, our focus must be on choosing which ruling would best ensure the fairest trial possible. Therefore, *Condon* and *Caceres* are inapposite.

■ District courts have been given broad discretion to fashion remedies to avoid conflicts of interest. *See, e.g.*, Fed. R.Crim.P. 44(c) (discretion to remedy conflicts arising from joint representation); *Wheat v. U.S.*, 486 U.S. 153, 163, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) (discretion to disqualify attorney despite waiver of conflict). The government goes a tad too far when it contends that a district court's discretion to remedy a conflict is limited to choosing among the three traditional remedies of limiting examination of the witness, disqualifying the defense attorney, or ensuring that the defendant waives his right to conflict-free counsel. None of the cases cited by the government precludes the use of other appropriate remedies. Since district courts have been given discretion both to exclude evidence and to remedy conflicts of interest, we decline to create a per se rule against excluding evidence to remedy a conflict of interest. Indeed, the First Circuit has already suggested that it is appropriate to exclude testimony in order to avoid disqualification when the same information is available from other sources. *See United States v. Diozzi*, 807 F.2d 10 (1st Cir.1986) (setting aside a jury verdict because the district court disqualified two defense attorneys who were potential witnesses even though a stipulation would have provided the same information as the live testimony of the attorneys; tactical advantage of forcing attorneys to appear as government witnesses rather than as defendants' counsel did not justify infringing on right to counsel).

■ Having decided that a district court may on rare occasions exclude evidence to resolve a conflict of interest, it remains for us to determine whether the district court's decision to exclude Underwood's testimony was an abuse of discretion. Without precisely delineating the scope of a district court's discretion, we note that a balancing of the kind contemplated by Rule 403 is in order. That is, the probative value of the evidence must be weighed against the negative consequences of admitting the evidence.

■ In this case, it is undisputed that Underwood's testimony would be highly probative, particularly with respect to the multiple conspiracy and statute of limitations issues. What *is* disputed is the characterization of the ill effects that would result from Martin's disqualification. We assume for the purpose of this appeal that Martin would in fact be disqualified if Underwood were to testify because a district court may not accept a waiver of the conflict. *See, e.g., United States v. Spears*, 965 F.2d 262, 276 (7th Cir.1992); *United States v. Defazio*, 899 F.2d 626, 631 (7th Cir.1990).

■ The Messinos (and the district court) characterize Martin's disqualification as a constitutional deprivation. To begin with, they argue that for all intents and purposes, Messino is irreplaceable and that disqualifying him would violate Dick Messino's Sixth Amendment right to effective counsel. This assertion is plainly wrong. The Sixth Amendment guarantees Messino adequate counsel, not the best

possible counsel. *See Caplin & Drysdale v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989); *Kokoraleis v. Gilmore*, 131 F.3d 692, 696 (7th Cir.1997) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The purpose of the right to counsel is "to ensure that criminal defendants receive a fair trial." *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (internal quotation marks and citations omitted). And, "in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 (quoting *United States v. Cronic*, 466 U.S. 648, 657 n. 21, 104 S.Ct. 2039, 2046 n. 21, 80 L.Ed.2d 657 (1984)). While it is undoubtedly true that no other lawyer has Martin's experience and knowledge of this case at this moment, it is also true that Martin is not the only lawyer who can provide Dick Messino with adequate representation.

■ Dick Messino argues that even if another lawyer could provide him with constitutionally adequate representation, he would be deprived of his counsel of choice if Martin were disqualified. Indeed, not surprisingly, the district court found that "[w]ithout question, Martin is Dick Messino's counsel of choice." (Memorandum Opinion and Order of February 24, 1999 at 13.) When Dick Messino ran out of funds, he successfully petitioned the district court to appoint Martin to represent him. Nonetheless, Dick Messino's argument fails because impecunious defendants do not have the right to choose their counsel. *Caplin & Drysdale*, 491 U.S. at 624, 109 S.Ct. at 2652. *See also Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697 ("[A] defendant may not insist on representation by an attorney he cannot afford."). A defendant's right to "retain counsel of his choosing ... does not go beyond the individual's right to spend his own money." *Caplin & Drysdale*, 491 U.S. at 626, 109

S.Ct. at 2652 (internal quotation marks and citations omitted).

Dick Messino points out that when he initially retained Martin, he did so using his own funds. He contends that he did not knowingly waive his right to counsel of choice when he asked the court to appoint Martin to represent him under the Criminal Justice Act. He, therefore, asks that we give effect to his original choice. This argument misses the mark. It is not that Dick Messino now lacks the right to hire counsel of his choosing that creates the problem. It is that he lacks the resources to effectuate that right. Even if he had the funds, the right to hire counsel of choice is limited. If Dick Messino had been able to afford to retain Martin privately, the court would, under the circumstances, have the discretion to disqualify Martin because of the conflict of interest. *See Wheat*, 486 U.S. at 162, 108 S.Ct. at 1699.

Finally, the district court voiced concern about the delay that would result if it appointed new counsel to represent Dick Messino. The court noted that both Dick and Clement Messino's trials would be delayed because the two brothers are being tried jointly. (Memorandum Opinion and Order of February 24, 1999 at 14.) However, the court stopped short of finding that the delay would be unconstitutional. In fact, even the Messinos do not contend that disqualification would result in unconstitutional delay. The consequences of allowing Underwood to testify would not include depriving Dick Messino of any constitutional right.

The consequences may include less effective (although presumably adequate) representation of Dick Messino, as well as inconvenience to both Dick and Clement Messino. Nevertheless, although regrettable, these consequences clearly do not outweigh the probative value of Underwood's testimony. We find that the district court abused its discretion by barring Underwood's testimony in order to resolve Martin's conflict of interest.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's order barring Underwood's testimony and REMAND pursuant to Circuit Rule 36 for proceedings consistent with this opinion.