In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1558

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MONTE S. GEARHART,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06-CR-40004-JPG—**J. Phil Gilbert**, *Judge*.

ARGUED APRIL 13, 2009—DECIDED AUGUST 6, 2009

Before CUDAHY, POSNER, and TINDER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Monte Gearhart was convicted of conspiracy to manufacture and distribute methamphetamine. He appeals his conviction, arguing that the delay between indictment and trial violated his statutory and constitutional right to a speedy trial, and that he was deprived of his Sixth Amendment right to

counsel.[1] We affirm the judgment of conviction and sentence.

## I. BACKGROUND

From 2002 to 2006, Monte Gearhart and a number of his acquaintances participated in a conspiracy to manufacture, and distribute methamphetamine in southern Illinois. The group cooked methamphetamine in Gearhart's home and at the homes of his co-defendants and then used, bartered and sold the drugs they produced.

In January 2006, Gearhart was charged with conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841, 846. Five co-defendants were eventually charged along with him. Each of Gearhart's co-defendants ultimately pleaded guilty and testified against him. Gearhart himself was tried and found guilty in October 2007, twenty months after he was indicted.

The principal reason for the delay between indictment and trial was that Gearhart and his co-defendants filed seventeen motions to postpone the trial. Gearhart's own

---

[1] Gearhart also argues that the sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because it was based on conduct that was not submitted to the jury and proven beyond a reasonable doubt. We have repeatedly rejected such arguments, *see, e.g., United States v. Johnson*, 335 F.3d 589, 591-92 (7th Cir. 2003), and therefore reject Gearhart's *Apprendi* claim without discussion. We note that Gearhart has preserved this claim for *certiorari.*

counsel filed nine such motions. Further, Gearhart did not object to any of his co-defendants' motions or move to dismiss the indictment on speedy trial grounds.

The trial was further delayed when the government filed a motion to disqualify Gearhart's attorney, Burton Shostak. The government indicated that it had learned that a former cellmate of Gearhart's named Terry Rogers had relevant information to its case and that it wanted Rogers to testify. Rogers was represented by Grant Shostak, who, in addition to being Burton's son and law partner, had also represented Gearhart himself at his detention hearing. After receiving notice of the government's motion, Burton Shostak filed a motion to withdraw, stating:

> I had no alternative but to file a motion [to withdraw]. I will tell you it is not a heartfelt motion that I filed. I would hope that you'd overrule it. I think that the actions in this case by the government are despicable. Monte has been in jail for over a year and a half. If you appoint new counsel . . . which I am assuming you will do, he's got to start all over . . . . And I just wanted the Court to know my feelings on the motion. And that while I have filed the motion, I want the Court to understand that I have to file it because of the way things look and not truly because of the way things are.

Despite Shostak's protest, the district court granted both parties' motions.

A new attorney was appointed, and Gearhart's trial began six weeks later in October 2007. The government

produced multiple witnesses who testified that Gearhart used, dealt and manufactured methamphetamine. Terry Rogers testified that when he shared a cell with Gearhart, Gearhart admitted that he and a co-defendant "had dealt [drugs] with each other several times."

The jury found Gearhart guilty and returned a special verdict finding that the conspiracy involved 500 grams or more of methamphetamine. The district court, in turn, found that the conspiracy involved between 1.5 and 5 kilograms of methamphetamine. Based on his adjusted offense level of 43 and his criminal history category of II, Gearhart was sentenced to life in prison.

## II.  DISCUSSION

### A.  Speedy Trial Claims

Gearhart's principal argument is that the twenty-month delay between indictment and trial violated both his statutory and constitutional right to a speedy trial. The Speedy Trial Act, 18 U.S.C. §§ 3161, et seq., requires that a federal criminal defendant be brought to trial within 70 days of the filing of the indictment. 18 U.S.C. § 3167(c)(1). However, the Act also provides that a defendant waives his rights under the statute if he does not move to dismiss the indictment. 18 U.S.C. § 3162(a)(2). Accordingly, every circuit to consider the issue has held that the failure to move for dismissal under the act constitutes a waiver, not merely a forfeiture. *United States v. Morgan*, 384 F.3d 439, 442 (7th Cir. 2004) (citing cases). Gearhart did not move for dismissal below; thus,

his statutory speedy trial claim is not preserved for appellate review.[2]

Gearhart also argues that the delay violated his Sixth Amendment right to a speedy trial. The constitutional right to a speedy trial is both narrower and broader than the corresponding statutory right. It is narrower because it protects only against delays that result in prejudice; but it is broader because the Constitution protects against prejudicial delay regardless of whether a defendant can show a violation of the Act. *See, e.g., United States v. Dessesaure*, 556 F.3d 83, 86 (1st Cir. 2009) (per curiam). Further, unlike a statutory speedy trial claim, a constitutional claim can be reviewed for plain error even where it was not raised below. *See, e.g., United States v. Oriedo*, 498 F.3d 593, 597 n.2 (7th Cir. 2007).

We evaluate constitutional speedy trial challenges based on a four-part test: (1) whether the delay was uncommonly long, (2) whether the government or the defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial in due

---

[2] Gearhart argues Seventh Circuit precedent permits us to review statutory violations that were not objected to below. It does not. "The Act explicitly provides that a defendant's failure to move to dismiss the indictment constitutes a waiver—not a forfeiture—of his rights under the Act, 18 U.S.C. § 3162(a)(2), and we may not disregard this provision." *Morgan*, 384 F.3d at 443; *see also United States v. Broadnax*, 536 F.3d 695, 698-99 (7th Cir. 2008). Counsel's suggestion to the contrary is meritless.

course and (4) whether the defendant suffered prejudice as a result of the delay. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *United States v. White*, 443 F.3d 582, 589-90 (7th Cir. 2006).

In the present case, Gearhart was indicted on January 19, 2006, and he was not tried until October 15, 2007. However, while this twenty-month delay is certainly long, the remaining factors of the *Doggett* test weigh decisively against Gearhart's claim. First, Gearhart's own counsel sought nine continuances during the period prior to trial. Where a defendant seeks and obtains a continuance, the defendant himself is responsible for the resulting delay. *See United States v. Larson*, 417 F.3d 741, 746 (7th Cir. 2005); *United States v. Baskin-Bey*, 45 F.3d 200, 204 (7th Cir. 1995). Second, Gearhart's failure to object to his co-defendants' requested continuances weighs heavily against his claim that the resulting delay violated his constitutional rights. *See United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007). Third, and most significantly, Gearhart was not prejudiced by the delay. Although Gearhart argues that he was prejudiced because the government was able to strengthen its case against him during the delay between indictment and trial, this fact is not relevant to the prejudice analysis. *See United States v. Salerno*, 108 F.3d 730, 738 (7th Cir. 1997) ("'Prejudice' is not caused by allowing the Government properly to strengthen its case, but rather by delays intended to hamper defendant's ability to present his defense.") (quoting *United States v. Tedesco*, 726 F.2d 1216, 1221 (7th Cir. 1984)).

In short, while the delay between Gearhart's indictment and his trial was long, the circumstances of the delay fall well short of establishing a violation of his Sixth Amendment rights. *A fortiori*, it was not plain error for the district court to fail to raise the issue on its own motion.[3]

## B. Disqualification of Counsel

Gearhart also argues that the district court's decision to disqualify his attorney deprived him of his Sixth Amendment right to counsel. We review the disqualification of counsel for abuse of discretion. *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008). We likewise review the manner in which the court balances the defendant's right to counsel against the government's interest in proving its case beyond a reasonable doubt for abuse of

---

[3] Gearhart also argues that his Sixth Amendment rights were violated because: (1) his counsel did not obtain his consent before seeking continuances, and (2) the district court did not make proper findings prior to granting the continuances. We reject these arguments as well. First, there is no requirement that counsel obtain Gearhart's consent prior to making purely tactical decisions such as the decision to seek a continuance. Second, although it appears the district court did not make a proper record of its reasons for granting the multiple continuances to Gearhart and his co-defendants, *see Zedner v. United States*, 547 U.S. 489, 498-99 (2006) (holding that the district court must make a record of its findings that the ends of justice are served by granting the continuance), as Gearhart himself requested the majority of these continuances, this was, if anything, harmless error.

discretion. *United States v. Messino*, 181 F.3d 826, 829-30 (7th Cir. 1999).

The Sixth Amendment protects a criminal defendant's right to a fair opportunity to secure the counsel of his choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *United States v. O'Malley*, 786 F.2d 786, 789 (7th Cir. 1986). This right to choose one's counsel, in turn, implies the right to continuous representation by the counsel of one's choice. *See* Anne Bowen Poulin, *Strengthening the Criminal Defendant's Right to Counsel,* 28 Cardozo L. Rev. 1213, 1249 (2006). Thus, disqualification of defense counsel should be a measure of last resort, and "the government bears a heavy burden of establishing that disqualification is justified." *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986).

Applying these principles, we have held that the disqualification of a defendant's counsel of choice can in principle pose a Sixth Amendment problem. *O'Malley*, 786 F.2d at 789; *cf. Diozzi*, 807 F.2d at 11 (finding a Sixth Amendment violation in attorney's disqualification where the defendant was willing to stipulate to the evidence giving rise to the conflict); *United States v. Cunningham*, 672 F.2d 1064, 1073 (2d Cir. 1982) (finding a Sixth Amendment violation in attorney's disqualification because the defendant agreed to limit his attorney's cross-examination of the witness whose testimony gave rise to the conflict).

Like the majority of our sister circuits, we have adopted a balancing test when the government seeks to introduce evidence that would create a conflict of interest

for the defendant's attorney. *Messino*, 181 F.3d at 830; *O'Malley*, 786 F.2d at 790-91; *see also United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983); *Cunningham*, 672 F.2d at 1073; *United States v. Garcia*, 517 F.2d 272, 277-78 (5th Cir. 1975).[4] Specifically, we have held that the introduction of evidence that would generate a conflict of interest is subject to analysis under Rule 403 of the Federal Rules of Evidence. *Messino*, 181 F.3d at 830. Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Thus, while there is a strong presumption of admissibility, "the Rules delineate a zone of discretion within which judges may exclude evidence." *Messino*, 181 F.3d at 829-30. In particular, a district court may "on rare occasions" exclude evidence to resolve a conflict of interest when "the probative value of the evidence is weighed against the negative consequences of admitting the evidence." *Id.* at 830.

Gearhart's central argument is that Rogers' testimony fails this balancing test because it was cumulative. Rogers testified that Gearhart admitted he and a co-defendant

---

[4] Gearhart attempts to rely on the First Circuit's decision in *Diozzi*, *supra*, as authority for the proposition that district courts must *always* exclude testimony to avoid disqualification. However, our adoption of Gearhart's interpretation of *Diozzi* is foreclosed by *Messino*, in which we "decline[d] to create a per se rule against excluding evidence to remedy a conflict of interest." 181 F.3d at 830.

"had dealt with each other several times." Gearhart argues that this same information was provided by multiple other witnesses who testified that Gearhart dealt, manufactured and used methamphetamine.

The problem with this argument is that Rogers' testimony, although close in content to other evidence that was admitted at trial, was not strictly speaking cumulative. Other witnesses testified that they distributed, cooked or used methamphetamine with Gearhart, but only Rogers testified that Gearhart *admitted* to committing these acts with his co-conspirators.[5] This admission was arguably probative of the existence of something more than a mere buyer-seller relationship between Gearhart and his co-defendants. *See, e.g., United States v. Colon*, 549 F.3d 565, 567-68 (7th Cir. 2008) (holding that something more than a mere buyer-seller relationship is required to support a conspiracy conviction). Thus, even if Gearhart had preserved his objection to Rogers' testimony, the government's interest in proving its case beyond a reasonable doubt outweighed Gearhart's interest in continuity of counsel in this case.[6]

---

[5] Along the same lines, Rogers' testimony was not cumulative in the light of Gearhart's post-arrest statement. In his statement, Gearhart admitted to obtaining methamphetamine from co-defendants and did not mention the conspiracy to sell. Again, this statement is not cumulative because Rogers testified that Gearhart admitted to *the conspiracy*.

[6] Although Rogers' testimony was properly admitted, we are troubled by the argument the government made below in support of its admissibility. In the district court, the govern-

(continued...)

Further, Shostak never asked the district court to exclude Rogers' testimony. Instead, after the government gave notice of its intent to introduce Rogers' testimony Shostak moved to withdraw from the case, albeit reluctantly. As Gearhart now notes, there were alternative ways of remedying the conflict of interest, and the district court had broad discretion to adopt a remedy other than disqualification. *O'Malley*, 786 F.2d at 790-91. For example, the parties could have stipulated to the evidence or agreed to limit the scope of Rogers' cross-examination. *Messino*, 181 F.3d at 830; *Cunningham*, 672 F.2d at 1073. However, Gearhart's attorney failed to request any of these options; instead, he immediately moved to withdraw. Since Shostak almost certainly had access to confidential information concerning Rogers, it was not plain error for the court to grant Shostak's motion.[7]

---

[6] (...continued)
ment argued that Rogers' testimony should be admitted, not because it was probative, but because testifying would enable Rogers to obtain a sentence reduction for substantial cooperation. This argument was well wide of the mark. The *Messino* balancing test balances the interests of the criminal defendant in the continuity of his or her counsel against those of the United States in proving its case beyond a reasonable doubt. Rogers' interest in lowering his sentence is emphatically not part of this calculus.

[7] For this same reason, we are not persuaded by Gearhart's argument that the district court was required to hold an
(continued...)

## III.  CONCLUSION

The conviction and sentence are AFFIRMED.

---

[7]  (...continued)
evidentiary hearing on the admissibility of Rogers' testimony prior to granting Shostak's motion to withdraw. *In limine* hearings may be appropriate in order to determine whether a witness actually possesses relevant information, but they are not constitutionally required. *O'Malley*, 786 F.2d at 793. Further, once again, Gearhart's attorney never requested such a hearing.

---