NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190168-U

NO. 4-19-0168

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 28, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JASON E. FONVILLE, | ) | No. 11CF1691 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's first-stage dismissal of defendant's postconviction
petition was appropriate.

¶ 2    In April 2015, defendant, Jason E. Fonville, was found guilty of attempt (first degree

murder) for shooting Ed Gunning. He was also found to have personally discharged the firearm

that proximately caused great bodily harm to Gunning. In May 2015, defendant was sentenced to

30 years in the Illinois Department of Corrections with an additional 50-year add-on for

personally discharging the firearm and causing great bodily harm. In January 2018, this court

affirmed defendant's conviction and vacated certain fines imposed by the circuit clerk. *People v.

Fonville*, 2017 IL App (4th) 150499-U. In December 2018, defendant filed, *pro se*, the instant

postconviction petition claiming ineffective assistance of trial counsel for counsel's "failure to

investigate, interview and call alibi witnesses." Defendant also claimed ineffective assistance of

appellate counsel for failing to raise certain evidentiary claims of error. In March 2019, the trial court ordered a first-stage summary dismissal of defendant's petition and he appeals. On appeal, he advances only his ineffective assistance of trial counsel claim.

¶ 3                                I. BACKGROUND

¶ 4        In December 2011, defendant was charged by information with the offenses of attempt (first degree murder), a Class X nonprobationable felony punishable by 6 to 30 years' imprisonment with a statutory add-on of 25 years to life for personally discharging a firearm causing great bodily harm (720 ILCS 5/8-4(a), (c)(1)(D), 9-1 (West 2010)), aggravated battery with a firearm, also a Class X felony (720 ILCS 5/12-4.2 (West 2010)), and being an armed habitual criminal, also a Class X felony (720 ILCS 5/24-1.7(a) (West 2010)). The underlying facts of this case are set forth in detail in the direct appeal referenced above. We will recite only those facts necessary for our analysis of defendant's claims here.

¶ 5        At trial in April 2015, defendant was positively identified by the victim, Ed Gunning, as the person who walked up and shot him in the face, head, and arm sometime after 7:30 p.m. on October 20, 2009. Although other witnesses described a black male dressed in black or dark clothing running from the area, no one other than Gunning could identify the shooter. Shell casings found at the scene and elsewhere, along with slugs removed from Gunning, were later matched to a handgun found at a residence defendant shared with his wife, Latesha. The handgun identified by Latesha as belonging to defendant was found under a mattress when police were summoned to the residence for a domestic dispute in November 2009. He was not arrested on the charges in this case until April 2013, after being apprehended in Nashville, Tennessee, on a warrant issued in December 2011.

¶ 6        The jury found defendant guilty of attempt (first degree murder) and found the

aggravating factors present and caused by defendant as well. His posttrial motion argued: (1) the verdict was "improper and not based on evidence from which the jury could find the Defendant guilty beyond a reasonable doubt," (2) the trial court erred by allowing testimony from Latesha Fonville which was otherwise protected by the marital privilege, and (3) the trial court erred by allowing Latesha Fonville to testify about an incident occurring on the same night as the shooting where Fonville "cocked a firearm and [made] the statement, 'I love the sound of that.' " The trial court denied the motion, and defendant was sentenced to 30 years in prison for the attempt (first degree murder) charge and a consecutive 50 years for discharging the firearm that proximately caused great bodily harm to the victim.

¶ 7        On direct appeal, defendant argued: (1) the State's evidence was insufficient to prove beyond a reasonable doubt he was the shooter, (2) the trial court erred by refusing to instruct the jury on the lesser-included offense of aggravated battery with a firearm, and (3) the circuit clerk improperly imposed certain fines. We affirmed defendant's conviction and vacated certain fines in *Fonville*, 2017 IL App (4th) 150499-U.

¶ 8        In December 2018, defendant filed, *pro se*, the instant postconviction petition alleging ineffective assistance of counsel for trial counsel's "failure to investigate, interview, and call" three alibi witnesses, including his mother, son, and son's mother to testify at his trial. According to his petition, the witnesses could have testified he was "at his mother's house babysitting his niece at the time of the shooting." Defendant also claimed to have given his trial counsel this information. Defendant contended he was unable to attach affidavits from them supporting his claim "due to his inability to hire and [*sic*] investigator to locate and prepare the affidavits from them." He also alleged ineffective assistance of appellate counsel for failing to claim ineffective assistance of trial counsel for (1) eliciting otherwise inadmissible evidence

- 3 -

regarding prior consistent statements by his wife to a detective, (2) failing to object to admission of a "mugshot" photo, and (3) failing to object to "inflammatory witness opinion that [defendant] did shootings for a living."

¶ 9        In March 2019, in a detailed written order, the trial court summarily dismissed defendant's postconviction petition, finding defendant made conclusory allegations unsupported by any reference to facts in the record and unsupported by affidavits, records, or other evidence as required by section 122-2 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 (West 2018)). The court further found defendant's petition included claims which either were or could have been raised on direct appeal and were therefore barred by *res judicata* and/or waiver. Regarding defendant's ineffective assistance of counsel claims, the court found they were not sufficient to "form an arguable basis that counsel's performance fell below an objective standard of reasonableness" or that defendant was prejudiced, both because there were no affidavits supporting the claimed statements of the alibi witnesses and because there was no basis to believe the outcome of the trial would have been different. The trial court also addressed the other evidentiary issues, which are not the subject of defendant's petition here. As a result, the trial court found the petition "frivolous and patently without merit" and dismissed it. Defendant appeals.

¶ 10                              II. ANALYSIS

¶ 11        On appeal, defendant makes one claim of error, asserting the trial court's summary dismissal of his postconviction petition was in error because he stated the arguable basis for a claim his retained trial counsel was ineffective for failing to investigate and present defendant's alibi evidence.

¶ 12        The Act provides a means by which criminal defendants can assert their

convictions were the result of a substantial denial of their rights under the federal or state constitutions, or both. *People v. Guerrero*, 2012 IL 112020, ¶ 14, 963 N.E.2d 909. "Proceedings under the Act are commenced by the filing of a petition in the [trial] court in which the original proceeding took place." *People v. Hodges*, 234 Ill. 2d 1, 9, 912 N.E.2d 1204, 1208 (2009). The purpose of the proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been and could not have been adjudicated previously on direct appeal. *People v. Harris*, 224 Ill. 2d 115, 124, 862 N.E.2d 960, 966 (2007). The defendant must show he or she suffered a substantial deprivation of his or her federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008). In postconviction proceedings, issues that could have been raised on direct appeal are deemed waived, and those which were raised are barred from reconsideration under the doctrine of *res judicata*. *People v. Simpson*, 204 Ill. 2d 536, 546, 792 N.E.2d 265, 274 (2001).

¶ 13    The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23, 987 N.E.2d 371. At the first stage, the trial court's review of the postconviction petition is to determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A *pro se* postconviction petition is considered frivolous or patently without merit only if it " 'has no arguable basis either in law or in fact.' " *People v. Brown*, 236 Ill. 2d 175, 184-85, 923 N.E.2d 748, 754 (2010) (quoting *Hodges*, 234 Ill. 2d at 16). The threshold for surviving the first stage of postconviction proceedings is low. To do so, the petition need only present "the gist of a constitutional claim." *Harris*, 224 Ill. 2d at 126. In considering the petition, the trial court may examine the court file, any transcripts of proceedings, and any action by the appellate court. 725 ILCS 5/122-2.1(c) (West 2018). Our review of a trial court's dismissal of a defendant's postconviction petition at

the first stage is *de novo*. *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763. In addition, we are permitted to affirm the trial court's decision on any basis found in the record. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 23, 128 N.E.3d 978.

¶ 14          Ineffective assistance of counsel claims raised in a postconviction proceeding are governed by the well-known standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Coleman*, 183 Ill. 2d 366, 397, 701 N.E.2d 1063, 1079 (1998). To prevail, a petitioner must first establish defense counsel's performance was deficient in that " 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *People v. Haynes*, 192 Ill. 2d 437, 472-73, 737 N.E.2d 169, 189 (2000) (quoting *Strickland*, 466 U.S. at 687). To establish the second prong, a petitioner must show the deficient performance prejudiced him, *i.e.*, there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (citing *Strickland*, 466 U.S. at 694). Our analysis may proceed in any order, however, and since a defendant must satisfy both prongs of the *Strickland* test, the trial court can dismiss the petition if either prong is not met. *People v. Peterson*, 2017 IL 120331, ¶ 79, 106 N.E.3d 944.

¶ 15          Here, defendant contended his privately retained counsel's performance was deficient for failing to call three alibi witnesses at trial—his mother, son, and son's mother. Although his petition alleged counsel's failure to interview or call the son and son's mother, his affidavit alleged he told counsel those two and his mother would all testify as alibi witnesses at trial. " 'A defense counsel has a professional duty to conduct a reasonable investigation or make a reasonable decision that a particular investigation is not necessary.' " *People v. Rodriguez*, 2018 IL App (1st) 160030, ¶ 54, 118 N.E.3d 557 (quoting *People v. Robinson*, 2017 IL App (1st)

161595, ¶ 99, 93 N.E.3d 573, citing *Domagala*, 2013 IL 113688, ¶ 38). Counsel's duty includes an obligation to independently investigate any possible defenses. *People v. Kokoraleis*, 159 Ill. 2d 325, 329, 637 N.E.2d 1015, 1017 (1994). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (Internal quotation marks omitted.) *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 42 (quoting *People v. Guest*, 166 Ill. 2d 381, 400, 655 N.E.2d 873, 882 (1995), quoting *Strickland*, 466 U.S. at 691). However, "the decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant." *Peterson*, 2017 IL 120331, ¶ 80. As a result, such decisions will not ordinarily support a claim for ineffective assistance of counsel and even "a mistake in trial strategy" will not, by itself, render representation constitutionally defective. *Peterson*, 2017 IL 120331, ¶ 80.

¶ 16        Even though a *pro se* petitioner need present only a limited amount of detail and is not required to include legal argument or citation to authority (*People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001)), he is not excused from providing any factual detail whatsoever on the alleged constitutional deprivation. *Brown*, 236 Ill. 2d at 184. The petition needs to set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent. *Hodges*, 234 Ill. 2d at 10; see also 725 ILCS 5/122-2 (West 2018) (stating a petition must have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached"). The purpose of the "affidavits, records, or other evidence" requirement of section 122-2 of the Act is to establish that a petitioner's allegations are capable of objective or independent corroboration. *People v. Delton*, 227 Ill. 2d 247, 254, 882 N.E.2d 516, 520 (2008). In fact, failure to attach the necessary

affidavits, records, or other evidence or explain their absence is fatal to a postconviction petition and may justify summary dismissal by the trial court. *Delton*, 227 Ill. 2d at 255.

¶ 17 Defendant's claimed compliance with section 122-2 is the bare assertion, "Petitioner is unable to attach the requisite affidavits from Nicole Ricks [(mother of his son)] and Jemere Fonville [(his son)] at this time due to his inability to hire and [*sic*] investigator to locate and procure the affidavits from them." However, besides the common-sense inquiry into why defendant would be unable to secure an affidavit from his own mother, the record reveals she was the source of verifying information in defendant's presentence report, her address was listed on his arrest warrant, and, according to his wife's testimony at trial, that address was his residence at the time of the offense. Further, the presentence report also indicates the other two alibi witnesses, his then-18-year-old son and son's mother, both lived in Jackson, Tennessee, and at the time of his arrest, defendant was apprehended in Nashville, Tennessee. They obviously must have been on good terms since (1) according to Fonville, they had made the trip from Tennessee to Decatur to visit him on the day of the shooting and (2) he contended in his affidavit they were willing to testify to his alibi if called at an evidentiary hearing on this petition. Defendant does not even attempt to show the efforts he made, unsuccessfully, to secure their affidavits on his own. Defendant's only explanation for the absence of their affidavits strikes us, and undoubtedly struck the trial court, as disingenuous at best. Defendant is confident Jemere and Nicole would testify at an evidentiary hearing consistent with his affidavit, both regarding his presence with them on the date and time of the shooting and the failure of his trial counsel to contact or call them as witnesses for trial. This alone would indicate contact with them at least some time after the trial and before filing his postconviction petition; otherwise, how would he be in a position to submit an affidavit to that effect? Even if he did not know the current location

of Jemere and Nicole, we can think of no reason why obtaining an affidavit from his mother would be difficult. See *Delton*, 227 Ill. 2d at 257. These observations are readily apparent from the record, and the trial court properly concluded defendant failed to adequately explain the absence of any affidavits. See 725 ILCS 5/122-2.1(c) (West 2018).

¶ 18 The trial court also found defendant's petition included claims which could have been raised on direct appeal and were therefore barred by *res judicata* or waiver. At no time prior to this postconviction petition, either before, during, or after trial, did he complain about his retained counsel's failure to investigate or present an alibi defense. Since defendant was represented by the same counsel at his posttrial motion, the absence of any such claim at that time may be understandable. However, as the presentence report reflects, this defendant is well-versed in the criminal justice system, having a criminal history stretching back to 1989, with five previous prison sentences as an adult. Defendant retained counsel in June 2014 and did not proceed to trial until April 2015, yet defendant never expressed his displeasure with counsel's performance or preparation at any pretrial conference and made no such complaints afterwards, including on direct appeal. Even the postconviction ineffective assistance of appellate counsel claim relates only to unrelated errors in the admission of certain evidence. He does not fault appellate counsel for failing to raise the issue before us. These are claims which could and should have been raised on direct appeal, and the trial court did not err in finding defendant waived them by failing to do so.

¶ 19 Where a postconviction petitioner claims the ineffective assistance of counsel based on counsel's failure to call a witness, although an affidavit from the proposed witness is not necessarily required to support a claim under section 122-2 of the Act, the claim needs to be otherwise supportable by the record or other evidence. *People v. Dupree*, 2018 IL 122307, ¶ 40,

- 9 -

124 N.E.3d 908. The affidavit is most important in those instances where a petitioner seeks to introduce "new witness testimony, *i.e.*, *new evidence*," he believes would have changed the outcome of the trial. (Emphasis in original.) *Dupree*, 2018 IL 122307, ¶ 40. There, absent an affidavit, the record or other evidence must be capable of a "substantial showing" that counsel was ineffective. *Dupree*, 2018 IL 122307, ¶ 40. We are therefore required to examine the record to see whether there is evidence sufficient for a substantial showing that defendant's claimed alibi evidence existed, or that an alibi would have been a viable defense strategy in light of the other evidence at trial, or even assuming alibi evidence existed, whether alibi evidence might have affected a jury verdict. See *People v. James*, 348 Ill. App. 3d 498, 505-07, 810 N.E.2d 96, 103-04 (2004) (stating determination of whether alibi evidence might have affected a jury verdict and prejudiced a defendant is made by reviewing the potential impact of the alibi evidence against the overall evidence of guilt).

¶ 20     It is clear from the trial record defense counsel focused on the issue of the identity of the shooter. Although Gunning, the victim, positively identified defendant at trial, while still in the hospital and heavily medicated, he gave a different physical description, at one point saying there were two men and even naming potential suspects. Later, after being shown a total of 36 photos, Gunning identified defendant as the shooter. Defendant's counsel focused his cross-examination of Gunning and his closing argument around the differences between his description near the time of the shooting and his identification at trial, the circumstances surrounding his observations at the time of the shooting, and his lack of 100% certainty when observing the photos. Defendant's wife, Latesha, testified defendant was with her shortly before Gunning was shot, armed with the handgun eventually found in his bedroom, and ballistically matched to not only the rounds fired at Gunning while he was walking on Williams Street but

those found several blocks away from the scene of the shooting. This was consistent with her description of the heated argument she had with defendant in her car when he brandished the handgun and fired four shots out the window of the car shortly before she dropped him off on Williams Street. The shell casings later found on Cleveland Street ballistically matched the gun from his bedroom. Latesha said defendant was on foot and, at the time of the shooting, the other witnesses who could not identify the shooter described a black male in dark clothing seen standing over Gunning and then running or walking quickly from the scene. That description was consistent with the clothing Latesha said he was wearing when she dropped him off. According to the evidence at trial, the shots fired on Cleveland Street were called in to the 911 emergency phone line approximately 30 minutes before the 911 call from the restaurant to which Gunning stumbled after being shot. According to testimony, it would have taken Gunning a few minutes to get from the location on Williams Street, where he was shot, to the restaurant, since it was not only several blocks away but because he said after he lay for several minutes where he had been shot, he fell three times while struggling to get to the restaurant. The prosecutor argued the actual time between the shots fired out of Latesha Fonville's car window and the shooting of Ed Gunning was probably closer to 20 minutes, which, from the record, does not appear unreasonable.

¶ 21 Defendant also attacked his wife's credibility and argued there was no direct evidence the handgun found in his bedroom was his, or had been fired by him, other than her statements to police, which is true. Counsel highlighted her statements to the police which were inconsistent with her trial testimony, noting many were given after she was in custody on outstanding warrants for an unrelated matter for which she was ultimately sentenced to prison. In closing argument, he noted the acrimonious nature of their relationship and her motivation to

- 11 -

testify against him. Defense counsel also focused a portion of his closing argument on the suspicions Gunning had early on that one of his former accounting clients had sent someone to kill him because of what he knew about the client's business dealings. All these areas of attack placed focus on the identity of the shooter, without highlighting defendant. This is not an unreasonable trial strategy. Defendant's counsel was able to attack both the victim's identification and his wife's credibility without having to defend the credibility of alibi witnesses with obvious bias, or deal with the issue of calling defendant and exposing him to cross-examination, or not calling him and relying solely on alibi witnesses subject to cross-examination. " 'Whether to call certain witnesses and whether to present an alibi defense are matters of trial strategy, generally reserved to the discretion of trial counsel.' " *People v. Jackson*, 2020 IL 124112, ¶ 106, 162 N.E.3d 223 (quoting *People v. Kidd*, 175 Ill. 2d 1, 45, 675 N.E.2d 910, 931 (1996)). This is especially true since juries are not obligated to find the testimony of an alibi witness to be more credible than that of a State's witness, especially where the alibi witnesses are related to the accused and possess an obvious bias. See *People v. Corral*, 2019 IL App (1st) 171501, ¶ 90, 126 N.E.2d 632 (collecting cases). The bigger question is whether alibi witnesses even existed. We have no way of knowing absent defendant's unsupported claim. The evidence against defendant was, in the words of the trial court, "extremely strong regarding Defendant's guilt and there certainly was a sufficient basis for the jury's verdict."

¶ 22 Considering the absence of affidavits or a credible explanation for their absence, we are left to consider whether this record supports a "substantial showing" counsel was ineffective. *Dupree*, 2018 IL 122307, ¶ 40. It does not. The trial court found defendant's claims did "not form an arguable basis that counsel's performance fell below an objective standard of

reasonableness and that it was not arguable the defendant was prejudiced," and we agree. A postconviction petition alleging ineffective assistance of counsel is subject to summary dismissal when it fails to meet both standards. *People v. Knapp*, 2020 IL 124992, ¶ 46.

¶ 23                                    III. CONCLUSION

¶ 24            For all the reasons set forth above, we find the trial court did not err when it summarily dismissed defendant's petition as frivolous and patently without merit.

¶ 25            Affirmed.