NOTICE

Decision filed 01/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 170438-U

NO. 5-17-0438

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Union County. |
| | ) | |
| v. | ) | No. 07-CF-136 |
| | ) | |
| BRIAN W. RODGERS, | ) | Honorable |
| | ) | Charles C. Cavaness, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in dismissing defendant's postconviction petition where defendant failed to establish he was not culpably negligent for the untimely filing of his petition.

¶ 2    In August 2007, the defendant, Brian W. Rodgers, was indicted on one count of solicitation of murder for hire in violation of section 8-1.2(a) of the Criminal Code of 1961 (720 ILCS 5/8-1.2(a) (West 2006)). Recorded conversations between the defendant and an informant for the sheriff's department indicated the defendant intended to solicit the informant to procure a third person to commit the murder of the defendant's uncle for the sum of $1000. Following a jury trial, the defendant was found guilty and subsequently sentenced to 20 years' imprisonment. On direct appeal, the defendant's conviction was affirmed. His petition for leave to appeal filed with the Illinois Supreme Court was denied. Following the appeal, the defendant filed a *pro se* petition for

1

postconviction relief which was docketed for second-stage proceedings, and postconviction counsel was appointed. Postconviction counsel filed an amended postconviction petition which the circuit court dismissed as untimely. The defendant appeals the circuit court's order dismissing his postconviction petition at the second stage. We affirm.

¶ 3                                    I. Background

¶ 4      On October 22, 2009, the jury returned a verdict finding the defendant guilty of solicitation of murder for hire. On March 19, 2010, the defendant was sentenced to 20 years' imprisonment in the Illinois Department of Corrections and 3 years of mandatory supervised release. The defendant filed a direct appeal arguing that the circuit court erred (1) in denying his motion to vacate an order authorizing the State's overhears of his meetings with a third party, (2) in denying his motion to suppress the recordings of the overhears, (3) in denying his request that the jury be instructed on the defense of entrapment, and (4) in denying his motion for a directed verdict. On direct appeal, this court affirmed the defendant's conviction in a summary order dated June 10, 2011. No. 5-10-0140 (2011) (unpublished order under Illinois Supreme Court Rule 23). On September 28, 2011, the defendant's petition for leave to appeal to the Illinois Supreme Court was denied. See *People v. Rodgers*, 955 N.E.2d 478 (table) (Ill. 2011). The defendant did not file a petition for *certiorari* to the United States Supreme Court.

¶ 5      On November 3, 2014, the defendant filed a *pro se* verified petition for postconviction relief arguing numerous claims of ineffective assistance of trial counsel and a claim of prosecutorial misconduct. On December 2, 2014, the circuit court found the postconviction petition presented the gist of a constitutional claim, docketed the matter for second stage proceedings, and appointed postconviction counsel to represent the defendant. On December 15, 2016, postconviction counsel filed an amended postconviction petition. The amended petition raised a

2

number of issues: timeliness of the petition, prosecutorial misconduct, ineffective assistance of counsel for (1) failure to properly advise the defendant of the entrapment defense, (2) failure to request a psychiatric examination, (3) failure to call witnesses, (4) failure to strike a particular juror; and (5) failure to properly prepare the defendant to testify at trial. Attached to the amended petition was the defendant's affidavit; a mental health evaluation from the correctional facility dated March 24, 2010; a mental health diagnostic and treatment note from the correctional facility dated April 18, 2010; an affidavit from a potential witness stating that had he been called to testify at trial he would have testified to the defendant's lack of intent to commit the alleged offense; and defense counsel's Rule 651(c) certificate.

¶ 6    On March 21, 2017, the State filed a motion to dismiss defendant's postconviction petition as untimely where the defendant had not alleged facts that supported a claim of lack of culpable negligence in the late filing of his petition. The State also maintained that the petition should be dismissed under the doctrine of *res judicata* and waiver where the defendant failed to raise the issues on direct appeal. On July 25, 2017, the defendant filed a response, arguing that the delay in filing his petition was not due to his culpable negligence where he relied on the advice of counsel who told him he had three years in which to file his postconviction petition; where he suffered from serious mental health issues and was housed in the psychological unit at the correctional facility; and where his access to legal materials, as well as his general level of mobility, was limited due to his confinement in the psychiatric unit.

¶ 7    On October 26, 2017, the circuit court granted the State's motion to dismiss the defendant's petition for postconviction relief finding the petition untimely where the defendant failed to establish a lack of culpable negligence. On November 9, 2017, the defendant filed the instant appeal.

3

¶ 8                                    II. Analysis

¶ 9      The defendant argues on appeal that the circuit court erred in dismissing his postconviction petition as untimely, that he received ineffective assistance from his trial counsel, and that the State violated his due process rights by failing to disclose the criminal background of its chief witness.

¶ 10     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding "is not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). "The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could have been, adjudicated previously upon direct appeal." *People v. Peeples*, 205 Ill. 2d 480, 510 (2002). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. 725 ILCS 5/122-2 (West 2016).

¶ 11     "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016); *Addison*, 2023 IL 127119, ¶ 18. Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. 725 ILCS 5/122-2.1(b) (West 2016); *Addison*, 2023 IL 127119, ¶ 18.

¶ 12     "The second stage of postconviction review tests the legal sufficiency of the petition." (Internal quotation marks omitted.) *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12. The

petitioner bears the burden at the second stage of making a substantial showing of a constitutional violation. *Id.* The circuit court may only dismiss a postconviction petition at this stage if the allegations, liberally construed in favor of the defendant and taken as true, do not make a substantial showing of a constitutional violation. *People v. James*, 2023 IL App (1st) 192232, ¶ 33. "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. A reviewing court applies a *de novo* standard to a trial court's dismissal of a postconviction petition at the second stage. *Addison*, 2023 IL 127119, ¶ 17.

¶ 13                                      A. Timeliness

¶ 14     The defendant concedes that his postconviction petition was not timely filed. Instead, the defendant asserts that he alleged sufficient facts in his petition and attached affidavit to establish that the delay in filing was not due to his culpable negligence for two reasons. First, he was suffering from "serious delusions" during a period of time while in prison. Second, he relied on his appellate counsel's inaccurate advice as to the deadline for filing his postconviction petition. The circuit court found, and the defendant does not dispute, that while the deadline for filing his postconviction petition was July 31, 2012, he did not file his *pro se* petition until November 3, 2014, over two years after the filing deadline.

¶ 15     The timing requirement for filing a petition for postconviction relief is considered an affirmative defense that may be raised, waived, or forfeited by the State at a second stage proceeding. *People v. Lander*, 215 Ill. 2d 577, 584 (2005). An untimely petition for postconviction relief is subject to dismissal unless the defendant alleges sufficient facts to establish that the delay in filing was not due to his culpable negligence. 725 ILCS 5/122-1(c) (West 2016); *People v. Stoecker*, 384 Ill. App. 3d 289, 291 (2008). The defendant has the burden to prove his lack of

culpable negligence. *Id.* at 292. While culpable negligence may not be intentional, it involves a disregard of the likely consequences that flow from one's actions. *Id.* Although the legislature did not define the term "culpable negligence" contained in section 122-1(c), the Illinois Supreme Court found that it "contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). While the circuit court's findings of fact regarding a defendant's culpable negligence will be reversed only if they are manifestly erroneous, the ultimate conclusion of whether the established facts demonstrate culpable negligence is subject to a *de novo* review. *Id.*

¶ 16    The defendant argues that the circuit court erred in finding him culpably negligent for his untimely petition despite facts alleged in his petition and attached affidavit that he suffered from "mental delusions." In his petition, the defendant alleged that his struggles with various mental health issues predated his sentence to the Department of Corrections. When he arrived at prison, he was assigned to the psychiatric unit. The defendant alleged that while he was housed in the psychiatric unit, he did not believe he was "mentally stable enough to interact with other people." In his petition he alleged that he was "not in his 'right mind' " because the amounts and combinations of medications prescribed to him constantly changed, and the side effects of these various medications made it difficult for him to think logically and clearly. In support of this allegation, the defendant referenced his attached affidavit. However, review of the affidavit reveals no such statements regarding the effects of medication made by the defendant. Rather, the defendant's only statement in his affidavit was that after his medication began to stabilize, he was assigned to group therapy where he had the opportunity to interact with others.

¶ 17    The defendant also alleged in his petition that while in prison he was diagnosed with manic depression and schizophrenia with paranoid delusions. Attached to the petition were two mental

6

health records. One was the mental health intake evaluation conducted on March 23, 2010, signed by Rebecca Creason, MA, LPC. She noted that the defendant reported he had been treated for panic attacks, posttraumatic stress disorder, and schizophrenia. The defendant also reported that prior to being assigned to the unit he was taking the following medication for mental health and/or emotional issues: Paxil, Xanax, and Seroquel. Creason made two provisional diagnoses based on information provided by the defendant as well as her clinical observations: schizophrenia-paranoid type and posttraumatic stress disorder. Creason recommended participation in substance abuse counseling and a referral to a psychiatrist. She further recommended close supervision watch until the defendant was stable on his medications.

¶ 18    The second record attached to the defendant's petition was a mental health diagnostic and treatment note from his initial evaluation conducted on April 18, 2010. The objective data reveals that in the mental status exam the patient was alert and oriented to person, time, and place. It noted that the defendant "present[ed] as being delusional" and his thought processes were slightly disorganized. However, the defendant's "[i]nsight and judgment appear[ed] to be adequate" at the time of the exam. Dr. Joy O. Urubusi, staff psychiatrist, diagnosed the defendant with a "psychotic disorder due to general medical condition" with a history of head trauma. Dr. Urubusi noted in the treatment plan that although the defendant presented with numerous symptoms, he had not indicated past psychiatric treatment in the community until he was in jail. The doctor noted that the defendant reported a history of head trauma which "may have been consistent with developing symptoms thereafter." Dr. Urubusi further noted that the defendant had reported that he was an alcoholic. The defendant was advised to seek a psychiatric referral if his symptoms were to worsen. Dr. Urubusi recommended supportive treatment and made some adjustments to the defendant's

medications, with a follow-up appointment in two to three weeks. There were no additional mental health records attached to the petition.

¶ 19   On appeal the defendant contends that the attached medical records indicating that he suffered from "serious mental health problems" and had "serious delusions" was evidence that in his mental state he did not have the ability to disregard the consequences likely to result from his delay in filing his petition. Contrary to his contention, the defendant fails to cite authority for the proposition that merely suffering from a mental health issue automatically establishes a lack of culpable negligence. It remains the defendant's burden to allege sufficient facts in his petition to establish in what way his mental health issues or medications prevented him from filing a timely postconviction petition. Taking the defendant's allegations as true, which we must, we find that the defendant did not meet his burden.

¶ 20   In his affidavit the defendant next averred that, even if he had been in his right mind, while he was in the psychiatric unit he did not have access or the resources to pursue his postconviction relief efforts because of the "severe restrictions imposed on inmates housed in the [unit]." However, the defendant failed to allege in his affidavit the dates that he was confined to the psychiatric unit that would support a claim that he was not culpably negligent in the delay in filing the petition. Furthermore, although in his affidavit he alleged that while in the psychiatric unit he had no access to the law library, in his petition he alleged that he had "limited access to the prison's law library."

¶ 21   Next, the defendant maintains that because he relied on his appellate counsel's inaccurate advice that he had three years in which to file his petition, he was not culpably negligent for the untimeliness of his petition. He further maintains that he attached his affidavit to his postconviction petition averring the same. The defendant argues that his reliance on the inaccurate advice of

8

appellate counsel is similar to that in *People v. Rissley*, 206 Ill. 2d 403 (2003), and *People v. Hobson*, 386 Ill. App. 3d 221 (2008), wherein the defendants' respective delays in filing their untimely postconviction petitions were found not to be the result of culpable negligence because the defendants relied on inaccurate advice of counsel as to when their petitions were due. Thus, the defendant urges for a similar result.

¶ 22 In *Rissley*, the defendant filed a *pro se* petition for postconviction relief six days after the statutory period expired. *Rissley*, 206 Ill. 2d at 417-18. In the defendant's amended petition, he alleged in part that his appellate counsel advised him he had three years from the date of sentencing to file a postconviction petition, and he attached an affidavit from appellate counsel which confirmed he gave the defendant this advice. *Id.* Our supreme court in *Rissley* found that "under the circumstances of this case" the defendant had established that the untimeliness of his petition was not due to his culpable negligence. *Id.* at 421.

¶ 23 In *Hobson*, the defendant relied on his appellate counsel's inaccurate advice when he filed his postconviction petition three to five months past the deadline. *Hobson*, 386 Ill. App. 3d at 231. Although he had not attached an affidavit from appellate counsel, the *Hobson* court held that the defendant had alleged enough facts to make a substantial showing that he was not culpably negligent for the late filing of his petition. *Id.* at 235.

¶ 24 We do not read *Rissley* and *Hobson* as broadly as the defendant since both cases were decided on their specific facts. Rather, we read *Rissley* and *Hobson* to stand for the proposition that the untimely filing of a postconviction petition due to reasonable reliance on the inaccurate advice of counsel may be excused, not that it must be excused in every circumstance. In *Lander*, our state supreme court cautioned that a determination as to whether a defendant has established that a delay in filing his postconviction petition was not due to his culpable negligence "is fact-

9

specific and is not amenable to an easily defined standard or rule. Rather, each case must be examined on its own facts." *Lander*, 215 Ill. 2d at 589.

¶ 25    The defendant next alleges that the circuit court erred when it dismissed his postconviction petition at the second stage of the proceedings. The defendant, citing *People v. Wheeler*, 392 Ill. App. 3d 303 (2009), argues that because he supported the allegations in the petition with his affidavit, the proceeding should have been moved to the third stage where the circuit court could assess the defendant's credibility. We agree that a circuit court is foreclosed " 'from engaging in any fact finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding.' " *Id.* at 308 (quoting *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)). However, to the extent *Wheeler* suggests that a defendant who has filed an untimely postconviction petition is entitled to a third-stage evidentiary hearing solely based on the existence of "well-pleaded facts" in the petition without a determination as to the sufficiency of those facts, we respectfully disagree and turn to our state supreme court for guidance.

¶ 26    In *Lander*, the defendant's postconviction petition was dismissed as untimely at the second stage proceeding. 215 Ill. 2d at 582. Although the defendant in *Lander* conceded that his petition was filed outside the time limitation period of the Act, he argued that his petition alleged sufficient facts to show the delay was not due to his culpable negligence. *Id.* at 586. The *Lander* court, without reference to credibility determinations, found that the defendant's reliance on advice of jailhouse lawyers, a law clerk, and a law librarian was not reasonable where there were no facts alleged to show these individuals had any specialized knowledge in postconviction matters. *Id.* at 588. The supreme court concluded that the defendant's reliance on such advice was insufficient to establish that the delay in filing his petition was not due to his culpable negligence. *Id.* at 589.

10

¶ 27    In a more recent Illinois supreme court case, *People v. Johnson*, 2017 IL 120310, ¶ 14, the defendant's postconviction petition was dismissed by the circuit court as untimely at the second stage due to the defendant's culpable negligence. Attached to the defendant's petition was an affidavit from a fellow prison inmate identified as a "freelance paralegal" on whom the defendant relied on for assistance in filing his petition. In his affidavit, the "freelance paralegal" averred that the defendant had been unable to obtain the record from the law library until March 19, 2008, and after that, a series of prison lockdowns prevented the timely completion of the petition. *Id.* ¶ 4. Included with the affidavit was a memo from a prison counselor verifying that the prison had been on lockdown from March 25 through April 18, 2008, and that there had been one-day lockdowns on April 24 and May 15, 2008. *Id.* The *Johnson* court found, without reference to credibility determinations, that the defendant's reliance on the "freelance paralegal" was insufficient to establish that the delay in filing the postconviction petition was not due to his culpable negligence. *Id.* ¶ 27.

¶ 28    Similarly, here, we examine the facts alleged by the defendant to determine whether they are sufficient to establish that the delay in filing his petition was not due to his culpable negligence. 725 ILCS 5/122-1(c) (West 2016); *Stoecker*, 384 Ill. App. 3d at 291. In his affidavit, the defendant averred that it was not until his condition began to improve and his medication began to stabilize that he was assigned to group therapy where he met other inmates who educated him on the legal aspects of his case, specifically with respect to any postconviction relief efforts. He also averred that after his condition stabilized after being in the special treatment center "for some time," he spoke to his appellate counsel about what postconviction relief efforts had been made on his behalf and learned that a postconviction petition had not been filed on his behalf. The defendant failed to provide the relevant dates to establish when his condition began to improve or when his medication

11

began to stabilize or even when he first spoke to his appellate counsel that would support his contention that he was not culpably negligent for the delay.

¶ 29    On appeal, the defendant contends that he alleged in his petition that his appellate counsel had advised him that he had "three years from the date the Illinois Supreme Court denied his PLA" to file his petition. After careful review of the record, however, we see no such statement made by the defendant in his affidavit. Instead, the record reveals that in both his petition and attached affidavit the defendant stated that he recalled his appellate counsel telling him that he had "three years from the conclusion of [his] case to file it." The defendant also averred in his affidavit that during every prior communication he had with appellate counsel, counsel told him and/or his mother that "there was a three year deadline to file."

¶ 30    The defendant was convicted of solicitation of murder for hire on October 22, 2009. However, he did not file his postconviction petition until November 3, 2014, a little over five years after his conviction. Even if we were to accept that the defendant relied on his appellate counsel's inaccurate advice that he had three years within which to file his petition, the defendant has alleged no facts sufficient to support the additional two-year delay in filing the petition. Thus, we find, under the facts presented here, the defendant has not met his burden to prove his lack of culpable negligence in the untimely filing of his postconviction petition. We further find that the trial court did not err in dismissing his petition at the second stage of the proceedings. Accordingly, because we find that the defendant untimely filed his postconviction petition, we need not address the merits of the defendant's appeal.

¶ 31                                III. Conclusion

¶ 32    For the reasons set forth above, we affirm the circuit court's judgment.

¶ 33    Affirmed.

12